NOTE: This disposition is nonprecedential

# United States Court of Appeals for the Federal Circuit

---

**UNDERWOOD LIVESTOCK, INC.,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2010-5072

---

Appeal from the United States Court of Federal Claims in case no. 05-CV-162, Judge Mary Ellen Coster Williams.

---

Decided: March 31, 2011

---

MARTIN G. CROWLEY, American Legal Services, of Fallon, Nevada, for defendant-appellee.

KURT G. KASTORF, Attorney, Environment & Natural Resources Division, United States Department of Justice, of Washington, DC, for defendant-appellee. With him on the brief were IGNACIA S. MORENO, Assistant Attorney General, and KATHERINE J. BARTON, Attorney.

---

Before GAJARSA, LINN, and MOORE, *Circuit Judges*.

PER CURIAM.

Underwood Livestock, Inc. ("Underwood") appeals from a final decision of the United States Court of Federal Claims ("Claims Court") granting the United States government's motion for summary judgment. *Underwood Livestock, Inc. v. United States*, 89 Fed. Cl. 287 (2009). The Claims Court found that Underwood failed to establish possession of a property right that entitled its predecessors-in-interest to build a tire dam structure on federal land. Because Underwood's predecessors-in-interest had previously litigated this issue, the Claims Court concluded that Underwood was precluded from relitigating this same issue. Because Underwood was unable to establish a property interest, its takings claim failed. For the reasons discussed below, this court affirms.

BACKGROUND

In 1998, Dalton Wilson, the president, sole employee, sole shareholder, and predecessor-in-interest of Underwood, erected a large tire dam structure on federal land. Wilson used "an old military four-by-four" to haul nineteen heavy equipment tires and then "took a 933 [CAT] loader, crawler loader in there with a front-end bucket on it and back grippers on it . . . [and] installed the dam." This dam structure was approximately 69 feet in length and nearly impounded water flowing through Underwood Canyon in Nevada. Underwood Canyon is situated within the Simpson Park Wilderness Study Area. *Wilson and Bowman*, 156 IBLA 89, 90 n.3 (IBLA Dec. 14, 2001). The Bureau of Land Management ("the Bureau") discovered the dam structure after the Nevada Department of Wildlife reported seeing a bulldozer in the canyon. *Id.* at 90. The Bureau then instructed Wilson to remove the dam. When Wilson refused, the Bureau issued a decision that Wilson had trespassed on federal land in violation of the

Federal Land Policy and Management Act, as amended, 43 U.S.C. §§ 1701-85 (1994) ("the Land Act").

Wilson appealed to the Interior Board of Land Appeals ("the Interior Board"), claiming that he had inherited a pre-existing right-of-way that allowed him to construct the dam structure. *Wilson*, 156 IBLA at 89-90. Wilson also filed suit in the United States District Court for the District of Nevada alleging causes of action under the Land Act, Quiet Title Act, and Fifth and Fourteenth Amendments of the U.S. Constitution. *See* Complaint, *Bowman and Wilson v. Babbitt*, No. 00-cv-506-HDM-RAM (D. Nev. Sept. 29, 2000). In December 2001, while the district court proceeding was pending, the Interior Board issued its decision upholding the decision of the Bureau. *Wilson*, 156 IBLA at 89. The Interior Board found that Wilson's predecessors-in-interest possessed state water rights to divert 0.323 cubic feet per second of surface waters of the Canyon during certain times of the year. *Id.* at 91. Despite possessing state water rights, however, the Interior Board ruled that under the Land Act, Wilson was required to obtain appropriate authorization for the construction and maintenance of the dam structure. *Id.* Because no right-of-way had been authorized, the Interior Board concluded that Wilson was liable for trespass damages. *Id.* at 99. Subsequently, the Bureau removed the tires comprising the dam and sent a letter to Wilson demanding payment of costs for dam removal and site rehabilitation.

Once the Interior Board issued its decision, the United States filed a motion for summary judgment in the district court action. *See* United States' Motion for Summary Judgment, *Bowman and Wilson v. Babbitt*, No. 00-cv-506-HDM-RAM (D. Nev. June 14, 2002). In this motion, the government sought summary judgment of Wilson's case under the Administrative Procedure Act ("APA"). *Id.* at 15-16. The district court subsequently granted the government's motion for summary judgment,

*Bowman and Wilson v. Babbitt*, No. 00-cv-506-HDM-RAM (D. Nev. Aug. 29, 2003). Wilson did not appeal.

On January 21, 2005, Underwood filed this case in the Claims Court, alleging that the Bureau's decision to dismantle the dam structure and bar Underwood's access to the site constituted a taking of real and personal property without just compensation, in violation of the Fifth Amendment. On November 29, 2007, the Claims Court held that in light of the Interior Board's decision, Underwood could not establish that it possessed a cognizable property interest in the right-of-way. *Underwood Livestock, Inc. v. United States*, 79 Fed. Cl. 486 (2007). Indeed, the Interior Board expressly determined that Underwood's predecessors-in-interest did not possess a right-of-way and hence did not have any property interest in the trespassing dam structure. The Claims Court determined that it lacked jurisdiction to review the judgments of the Interior Board, explaining that Congress instead vested the district courts with the authority to review the decisions of the Interior Board under the Administrative Procedure Act, 5 U.S.C. §§ 701-06. *Id.* at 490. Rather than dismiss Underwood's complaint, however, the Claims Court stayed the case to permit Underwood's predecessors-in-interest to challenge the Interior Board's decision in the United States District Court for the District of Nevada. *Id.* at 499-500. Underwood's predecessors-in-interest, Wilson and Bowman, then sought judicial review of the Interior Board's decision, but were ultimately unsuccessful. Transcript of Record at 14, *Wilson and Bowman v. U.S. Dep't of Interior*, No. 07-cv-612 (D. Nev. Oct. 30, 2008), ECF No. 26.

On February 2, 2009, the Claims Court lifted the stay and the parties filed cross-motions for summary judgment. The Claims Court determined that because Underwood's predecessors-in-interest were unsuccessful in challenging the Interior Board's decision, it remained a bar to Underwood's takings claim. *Underwood*, 89 Fed.

Cl. at 299. Because the Interior Board ruled that Underwood's predecessors-in-interest lacked a cognizable property interest in a right-of-way that would have provided a basis for construction of the dam structure, Underwood was barred by issue preclusion from relitigating that issue. *Id.* at 302. Thus, absent a property interest, the Claims Court concluded that Underwood's takings claim failed and granted the government's motion for summary judgment. *Id.* Underwood timely appealed, and this court has jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

On appeal, Underwood raises eight issues: (1) whether Underwood has a right to maintain the dam structure; (2) whether the government violated Underwood's procedural due process rights under the Fifth Amendment; (3) whether the Interior Board possesses subject matter jurisdiction to hear issues relating to water rights; (4) whether the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by concealing a state engineer's ruling; (5) whether the Interior Board decision was contrary to law; (6) whether the Claims Court was bound by *res judicata* in finding Underwood was bound by the Interior Board decision; (7) whether the federal government possesses police powers in the state of Nevada to interfere with Underwood's rights; and (8) whether the interference with Underwood's rights was a violation of state and federal law.

Notably, Underwood does not challenge the Claims Court's grant of summary judgment or the Claims Court's decision on issue preclusion.

## I. Attempts to Relitigate Underwood's Property Interest

The decision of the Interior Board, finding that Underwood's predecessors-in-interest lacked a valid right-of-way and that the dam structure was therefore erected in trespass, is not subject to review in the Claims Court or

this court. Although the Claims Court has jurisdiction over Underwood's takings claim, that claim fails unless Underwood can demonstrate it possessed a valid property interest, i.e., a right-of-way to construct the (now destroyed) dam structure on federal land. The Claims Court determined Underwood was barred by issue preclusion, and Underwood has not challenged that legal determination on appeal. Indeed, Underwood declares that "the issue of whether . . . Underwood . . . [is] bound by the judgment is not what is before this United States Appeals Court [sic] for the Federal Circuit." Reply Br. 15. To the contrary, that was the determinative issue before the Claims Court and is the sole issue before this court.

Underwood argues that it does not seek to relitigate any issue, but instead asks this court to "look at the facts of the case and to apply the law as intended by Congress." Reply Br. 1. Underwood's inconsistent contentions notwithstanding, five of Underwood's asserted issues (issues one, five, six, seven, and eight) seek to relitigate the Interior Board's decision. This court will briefly address why Underwood is bound by issue preclusion and then will address Underwood's attempts at relitigation.

## A. Issue Preclusion

"[A] judgment on the merits in a first suit precludes relitigation in a second suit of issues actually litigated and determined in the first suit." *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994). The Supreme Court has recognized the applicability of issue preclusion to findings in administrative proceedings where the administrative body was "acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966). The Claims Court has, on numerous occasions, afforded Interior Board decisions issue preclusive effects. *See, e.g.*, *Klump v. United States*, 38 Fed. Cl. 243 (1997).

As this court has made clear, a party is barred from relitigating an issue if:

> (1) the issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) the party against whom estoppel is invoked had a full and fair opportunity to litigate the issue in the first action.

*Innovad Inc. v. Microsoft Corp.*, 260 F.3d 1326, 1334 (Fed. Cir. 2001).

Here, the issue underlying Underwood's takings claim is whether Underwood possessed a cognizable property interest in the dam structure. This, in turn, hinges upon whether Underwood's predecessors-in-interest possessed a valid right-of-way entitling them to build the dam structure on federal land. This precise issue was actually litigated and adjudicated before the Interior Board. The Interior Board determined that Underwood's predecessors-in-interest lacked a valid right-of-way. *Wilson*, 156 IBLA at 98-99. This issue was essential to the Interior Board's decision because it served as the basis for its conclusion that Underwood's predecessors-in-interest trespassed on public lands by building the dam structure. *Id.*

Although Underwood itself was arguably not a party to the Interior Board decision, the Supreme Court has articulated six categories where nonparty issue preclusion applies. *Taylor v. Sturgell*, 128 S.Ct. 2161, 2172 (2008). Here, the facts underlying the applicability of at least one of those exceptions are undisputed. "[N]onparty preclusion may be justified based on a variety of pre-existing substantive legal relationships between the person to be bound and a party to the judgment." *Id.* (citations and quotations omitted). One such qualifying relationship is that of preceding and succeeding owners of property. *Id.*

Because Underwood's predecessors-in-interest were parties to the Interior Board's decision, Underwood is bound by the resolution of this issue and cannot relitigate this issue.

Underwood argues that the Claims Court was "collaterally estopped under the doctrine of *res judicata* and issue preclusion in claiming Underwood . . . was a party and is bound to the decision of the Interior Board." Appellant's Br. 21. In advancing this argument, Underwood cites a number of allegedly conflicting cases and simply concludes that "[a]ll the before mentioned cases create[] a finality that is final and arises in the context of statutes providing for appellate review of 'final Decisions' and invokes the doctrine of *res judicata* and collateral estoppel." *Id.* at 22. Underwood's challenge to the application of issue preclusion here is based on its contention that Underwood was not a party to the Interior Board proceeding. But that argument is entirely misplaced as the Claims Court did not find that Underwood was, in fact, a party to the Interior Board proceeding. Instead, it relied upon the Supreme Court's acceptance of nonparty issue preclusion against successors-in-interest. By focusing on the wrong issue, Underwood fails to explain why the exception actually relied upon by the Claims Court should not apply here. At bottom, Underwood is precluded from asserting any property interest in the dam structure.

## B. Attempts to Relitigate

Underwood argues it had a right to maintain the dam structure, the Interior Board's decision was contrary to law, the federal government lacked authority to interfere with the dam structure, and the government's interference with Underwood's dam structure was a violation of state and federal law. Each of these issues seeks to relitigate whether Underwood's predecessors-in-interest possessed a valid right-of-way and thus whether Underwood possessed a valid property interest in the dam

structure.  As explained above, Underwood is precluded from relitigating this issue.

## II. Remaining Issues

Underwood raises three additional issues: (1) whether Underwood's procedural due process rights were violated; (2) whether the Interior Board possesses subject matter jurisdiction to hear issues relating to water rights; and (3) whether the government committed a *Brady* violation. The government argues that each of these issues is frivolous.  Each issue is addressed in turn.

Underwood argues its procedural due process rights were violated by the alleged lack of notice of the Bureau proceeding.  First, this court lacks jurisdiction to adjudicate constitutional claims that do not provide for the payment of money damages. *Joshua v. United States*, 17 F.3d 378, 379-80 (Fed. Cir. 1994).  Even if we had jurisdiction, the factual basis for Underwood's argument is undercut by its own complaint, which sets out in some detail the correspondence between Underwood and the Bureau prior to the Bureau initiating action against Underwood.   Moreover, Underwood's president, sole employee, and sole shareholder previously challenged the Bureau decision on precisely this ground before the Interior Board and twice before the United States District Court for the District of Nevada.  For support that this court can review decisions of the Interior Board, Underwood cites 5 U.S.C. § 7703(c), titled "Judicial review of decisions of the Merit Systems Protection Board."  Appellant's Br. 6.  Underwood's statement of statutory authority concerning our jurisdiction is incorrect.  The Merit Systems Protection Board is not the Interior Board.  This court, just as the Claims Court, is a court of limited jurisdiction and lacks jurisdiction to review decisions of the Interior Board.  To the extent Underwood is seeking review of the decisions of the Bureau or the district court in this case, Underwood sets forth no basis for jurisdiction of the Claims Court or this court over such matters, and

indeed no such basis exists. *See, e.g., Vereda, Ltda. v. United States*, 271 F.3d 1367, 1375 (Fed. Cir. 2001) (stating the Claims Court "does not have jurisdiction to review the decisions of district courts" and "cannot entertain a taking[s] claim that requires the court to 'scrutinize the actions of' another tribunal." (citations omitted)). Underwood's argument lacks merit.

Underwood next challenges the subject matter jurisdiction of the Interior Board to adjudicate water rights. First, whether the Interior Board can adjudicate water rights is irrelevant to this action because the Interior Board did not invalidate any water rights. In fact, the Interior Board assumed that Underwood's predecessors-in-interest held a valid state water right. *Wilson*, 156 IBLA at 90-91. The Interior Board then explained that it did not follow from this water right that Underwood's predecessors-in-interest held a right-of-way to construct a tire dam structure on federal land. *Id.* at 95. Underwood's argument lacks merit.

Underwood next argues that the United States committed a *Brady* violation by concealing a Nevada State Engineer's ruling affirming the existence of Underwood's water rights. Underwood fails to explain how the federal government "concealed" this ruling when Underwood discovered the ruling by simply visiting the state engineer's office. Nor could this "concealment" violate *Brady* because the Nevada State Engineer's ruling is not exculpatory evidence in a criminal proceeding. *See Brady*, 373 U.S. at 87. Underwood's argument lacks merit.

Finally, in addition to the irrational and misplaced arguments addressed above, Underwood advances many more. For example, Underwood's reply brief spends two unnecessary pages urging this court to take mandatory judicial notice of a laundry list of items ranging from the Constitution of the United States to "all Acts of Congress" to "the Common Law Maxim of 'First in Time is First in Right.'" Reply Br. 18-19. Additionally, in Underwood's

opening brief, Underwood states, "[i]f the government in and through their employee's [sic] both in the executive and judicial branches had read the Act from the Statutes at Large and not from their manuals or from the Code, they would have spared Underwood Livestock Inc. the violations of its constitutionally protected, Fifth Amendment Rights." Appellant's Br. 18. Underwood's diatribe continues, "[t]he Code is only prima facie evidence of the law and pursuant to Title 1 (which has been enacted into positive law) § 204(a), Title 43 has not been enacted into positive law and the only law is the United States Statutes at Large." *Id.* at 19. Underwood fails to explain how any of this relates to or has any bearing on its case.

## CONCLUSION

The Claims Court determined that Underwood was barred by issue preclusion from asserting any property interest in the destroyed dam structure. Underwood, on appeal, has not attempted to challenge that determination and instead has sought both to relitigate the Interior Board's decision and to raise additional issues completely lacking in merit. For the foregoing reasons, the decision of the Claims Court is affirmed.

## **AFFIRMED**